# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

LI SONG DONG,

    Petitioner,

  v.

CHRISTOPHER CHESTNUT, et al.,

    Respondents.

Case No. 1:26-cv-00607-JLT-SAB-HC

FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION AS MOOT, AND IMMEDIATELY RELEASE PETITIONER

(ECF Nos. 1, 10)

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner, a citizen of the People's Republic of China, entered the United States without inspection in or around 1993.[1] (ECF No. 1 at 5.[2]) On August 29, 1997, an immigration judge ("IJ") issued an order of voluntary departure. (Id.; ECF No. 18-1 at 3.) An appeal was filed and then dismissed on July 29, 1999. Petitioner never left the United States. In or around 1999, Petitioner was taken into immigration custody. Petitioner was detained for approximately fifteen months without removal being carried out. Petitioner was released in 2000 and was issued an

---

[1] The Form I-213 submitted by Respondents states that Petitioner entered the United States in 1991. (ECF No. 18-1 at 2.)

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

order of supervision ("OSUP"), which required Petitioner to appear at check-ins periodically. (ECF No. 1 at 5.) Initially, Petitioner was instructed to report in person on an annual basis. In 2004, Petitioner was instructed to report in person monthly. The petition alleges that Petitioner complied with the terms of the OSUP for over twenty years and has never violated any OSUP condition or requirement. (Id. at 5–6.)

On March 6, 2025, the Miramar Sub-Office of U.S. Immigration and Custom Enforcement's ("ICE") Miami Field Office emailed Petitioner's former counsel, notifying them that Petitioner was scheduled for an in-person appointment on May 29, 2025. The notice made no mention of any potential revocation of his release or a case review. On May 29, 2025, Petitioner appeared at ICE's Miramar office as instructed. During this appointment, ICE took Petitioner into custody and has detained him ever since. The petition alleges that prior to taking Petitioner into custody ICE did not provide a written revocation decision signed by the Executive Associate Commissioner or District Director, ICE did not conduct a prompt informal interview upon re-detention, and ICE did not issue any record-based finding that there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future. (ECF No. 1 at 6.)

In December 2025, ICE served Petitioner with a notice scheduling a custody review interview for December 29, 2025. The interview, however, never took place, and no explanation was provided for its cancellation. Petitioner has not received a custody review. On January 7, 2026, Petitioner's counsel submitted a written parole request to ICE, seeking Petitioner's release. (ECF No. 1 at 6.) On January 8, 2026, ICE's San Francisco Enforcement and Removal Operations ("ERO") Outreach Team responded by stating that the parole request had been forwarded to the Bakersfield ICE office, which oversees case management for individuals detained at California City. On January 9, 2026, Petitioner's counsel sent the parole request by mail to the California City Correctional Center, the Bakersfield sub-office of the ICE San Francisco Field Office, and ICE Headquarters' Post-Order Detention Unit. None of these offices have responded to the parole request. (Id. at 7.)

On January 24, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On January 27, 2026, Petitioner filed a motion for temporary restraining order, which was denied

as untimely. (ECF Nos. 5, 7.) On February 12, 2026, Petitioner filed a motion for preliminary injunction, which the assigned district judge referred to the undersigned. (ECF Nos. 10, 14.) On February 26, 2026, Respondents filed an opposition to the petition and motion for preliminary injunction. (ECF No. 18.) On March 6, 2026, Petitioner filed a reply. (ECF No. 23.)

**II.**

**DISCUSSION**

The Court recommends advancing the merits determination and consolidating it with the resolution of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).

In the petition, Petitioner asserts the following claims for relief: (1) Petitioner's detention without adequate notice and opportunity to contest such deprivation violated his due process rights; (2) Respondents revoked Petitioner's release and re-detained Petitioner in a manner that violated ICE's regulations; and (3) Petitioner's detention is unjustified and bears no reasonable relation to any legitimate government purpose, in violation of due process. (ECF No. 1 at 7–12.)

**A. Violation of Regulations**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of

removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
>> "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6). Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

///

4

Respondents argue that while Petitioner's "detention has exceeded the presumptively reasonable six-month period, Petitioner has failed to meet his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future" under Zadvydas. (ECF No. 18 at 4.) "However, the burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), --- F. Supp. 3d ----, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 2025 WL 3123793, at *3 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3).

1. Informal Interview

Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal. Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon such a determination:

[T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination

5

whether the facts as determined warrant revocation and further denial of release.

*Id*. § 241.13(i)(3).

Hoac v. Becerra, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025).

Here, the petition asserts that Respondents "violated the procedural protections afforded by 8 C.F.R. §241.13 (1) by failing to conduct an informal interview promptly after returning Mr. Dong to custody." (ECF No. 1 at 10.) Respondents do not respond to this allegation whatsoever. "Because there is no indication that an informal interview was provided to Petitioner, the court finds . . . that his re-detainment was unlawful." Hoac, 2025 WL 1993771, at *4.

2.  Changed Circumstances

"A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, No. 1:25-cv-01308 JLT EPG, --- F. Supp. 3d ----, 2026 WL 279888, at *5 (E.D. Cal. Feb. 3, 2026) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at *4. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 2025 WL 3123793, at *4 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

Here, the petition asserts that "Respondents failed to provide any regulatory basis for the revocation of Mr. Dong's prior release as required under 8 C.F.R. § 241.13(i). There is no evidence of a change in circumstances or a determination that 'there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" (ECF No. 1 at 10.) In

6

response, Respondents merely state that "[s]ince Petitioner's re-detention, there have been efforts by Enforcement and Removal Operations (ERO) to obtain travel documents."[3] (ECF No. 18 at 2.) Respondents do not provide any details whatsoever regarding what actions have been and are being taken in pursuing Petitioner's removal to China and to obtain travel documents. "The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future." Hoac, 2025 WL 1993771, at *4. "Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around. Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance." Id. Accordingly, the Court recommends finding that Respondents have failed to satisfy their burden to show a significant likelihood of removal.

Based on the foregoing, the Court recommends finding that Petitioner is entitled to habeas relief on his second cause of action and immediate release. See Yang v. Kaiser, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) ("In sum, because ICE did not follow its own regulations in deciding to re-detain Ceesay [without providing an informal interview], his due process rights were violated, and he is entitled to release."); Nguyen, 788 F. Supp. 3d at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and

---

[3] Respondents note that "[s]hould the Court require, Respondents are prepared to supplement the record with a sworn declaration or additional documents." (ECF No. 18 at 2 n.1.) The Court issues the findings and recommendation on the record currently before the Court.

petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 2025 WL 3123793, at *7 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

## B. Due Process

In the first cause of action, Petitioner asserts that "[b]y living freely for nearly twenty-five years after release, Mr. Dong developed a substantial liberty interest in avoiding reincarceration" and that his "detention and resulting loss of his liberty without adequate notice and opportunity to contest such deprivation violated his due process rights." (ECF No. 1 at 7–8.) Respondents do not address this claim.

> [M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest. *See e.g., J.L.R.P.*, 2025 WL 3190589, at *8–10; *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025). In *J.L.R.P.*, this Court found that the petitioner was entitled to a bond hearing prior to re-detention because (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs. *J.L.R.P.*, 2025 WL 3190589, at *9–10 (citing the factors enumerated in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing. *Alva*, 2025 WL 2419262, at *3–5.

Huang, 2026 WL 279888, at *8.

Here, Petitioner has been "living freely for nearly twenty-five years after release," and "[d]uring this time, he built a stable life in the United States, operating his own business, working to support himself, paying taxes, raising his U.S.-born twin sons, and living openly in the community. He also holds ownership interests in multiple companies within the United States." (ECF No. 1 at 7–8.) The petition alleges, and Respondents do not dispute, that Petitioner has complied with all OSUP requirements. "There are no changed circumstances to justify his re-

8

detention in this regard. Accordingly, in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 2026 WL 279888, at *9.

### III.

### RECOMMENDATIONS

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED;

2. Petitioner's motion for preliminary injunction (ECF No. 10) be DENIED as moot;

3. Petitioner be released, subject to his most recent order of supervision; and

4. Respondents be enjoined from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.

///

///

///

Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 16, 2026**

STANLEY A. BOONE
United States Magistrate Judge

10